277 N.J. Super. 617 (1994)
650 A.2d 16
TAMMY S. SHORTER AND RICHARD L. SHORTER, PLAINTIFFS,
v.
WILLIAM L. LEACH, NATIONAL CAR RENTAL, JOHN DOE, A FICTITIOUS INDIVIDUAL, XYZ CORPORATION, A FICTITIOUS CORPORATION, DEFENDANTS.
Superior Court of New Jersey, Law Division Burlington County.
Decided June 10, 1994.
*618 Peter C. Lange, Jr. for plaintiffs (Almeida & Hunt, attorneys).
Anthony Young for defendants William Leach and National Car Rental (Ferdinand & Klayman, attorneys).
SCHLOSSER, J.S.C.
This is a verbal threshold case which arises out of a motor vehicle accident that occurred on Hanover Street in Pemberton, N.J. on December 23, 1991. It comes before the court on the motion of defendants for summary judgment. The issue presented is whether economic loss alone creates a serious impact on plaintiff's lifestyle sufficient to cross the verbal threshold.
The plaintiff, Tammy S. Shorter, was the driver of an automobile which was struck by an automobile operated by defendant, William L. Leach. Plaintiff sustained personal injuries as a result of the collision and, along with her husband, filed suit against defendants. Plaintiff was insured under a policy issued by State Farm Insurance Company and elected the verbal threshold tort option as enunciated in N.J.S.A. 39:6A-8(a). Defendants have brought this motion for summary judgment alleging that plaintiff *619 has failed to meet the verbal threshold. Plaintiff opposes defendants' motion claiming that a genuine issue of material fact exists as to whether plaintiff has met the verbal threshold as to type seven, eight or nine. At issue is the criteria needed to satisfy the "serious impact" requirement under Oswin, infra.
A brief recitation of the facts follows.
Following the automobile accident, plaintiff was seen at Memorial Hospital of Burlington County where x-rays of plaintiff's skull and spine were negative for fractures. Plaintiff then presented herself to the office of Dr. W. Edward Horswood, D.C., for examination on December 23, 1991 with complaints of severe headaches, severe pain and numbness in the right shoulder and neck pain. She treated with Dr. Horswood approximately 33 times from December 23, 1991, through December 10, 1992. In his final report dated December 2, 1993, Dr. Horswood noted upon physical examination that there was spasm in the cervical paraspinal musculature along with significant decreases in range of motion in the neck. He also noted that x-rays taken on December 23, 1991, revealed rotational malposition of C2, 5 and 6; flexion malposition of C5 indicative of ligamentous damage; loss of cervical curve and narrowing of the intervertebral foramen at C4, 5 and 6. His final report was issued December 2, 1993. Spasm was still present and plaintiff had decreased range of motion in the cervical spine by degrees as follows: flexion 20/60, extension 10/45, right rotation 40/80, left rotation 40/80, right lateral flexion 15/45, and left lateral flexion 20/45. His diagnosis was post traumatic cervical sprain and strain and encephalgia. Dr. Horswood opined that plaintiff, due to the ligamentous injury, suffered a partial disability which is permanent in nature and causally related to the automobile accident of December 23, 1991.
Plaintiff was also examined by Dr. Joel F. Yudin, D.O., on December 26, 1991, January 7, 1992 and January 21, 1992. Dr. Yudin initially found decrease of cervical and thoracic range of motion with bilateral trapezius spasm. However, in his report dated February 24, 1992, Dr. Yudin indicates that by his last *620 examination, plaintiff's range of motion was full and that plaintiff's symptoms appear to have resolved themselves. An MRI was ordered and found to be negative. Dr. Yudin opined that he did not expect any permanent damage as a result of the accident.
Plaintiff was seen by Dr. Eric Chesloff, D.C., for an independent medical examination on March 10, 1993. Dr. Chesloff in his report dated March 16, 1993, found substantial diminished range of motion in the cervical and thoracolumbar spines but did not detect any symptoms which would support plaintiff's residual complaints nor did any diagnostic tests support plaintiff's deficits. He found no evidence of muscle spasm or swelling.
Plaintiff was employed by Pemberton Township School as a teacher's aid and missed approximately one month from that job. Plaintiff had a second job as a waitress, and she claims she has been unable to return to this job following the accident. This second job provides approximately one-half of her total income. Plaintiff claims she has raised a genuine issue of material fact as to whether she suffered a type seven, eight or nine injury under the verbal threshold. She also claims that her injuries have had a serious impact on her lifestyle because she is no longer able to work her second job. This, she claims, has resulted in a loss of income which has seriously impacted on her lifestyle. No other limitations on lifestyle were mentioned, nor has plaintiff submitted a certification as to any other limitations on her lifestyle.
Our Supreme Court devised a two-part test to determine the verbal threshold issue: "(1) whether under any view of the plaintiff's injuries they can be said to fall within at least one of the nine categories that New Jersey's statute specifies, and (2) if so, whether the evidence before the court on a motion for summary judgment demonstrates a material dispute of fact regarding the nature and extent of plaintiff's injuries." Oswin v. Shaw, 129 N.J. 290, 307, 609 A.2d 415 (1992). A plaintiff must submit credible, objective evidence to support the finding of an injury. Id. at 317, 609 A.2d 415. Objective evidence is normally shown through an x-ray, MRI or thermogram, but can also include "swelling, discoloration, *621 and spasm." Id. at 320, 609 A.2d 415. However, the injury itself will not satisfy the statutory requirement; rather the resultant loss and disability are the key. Id. at 318, 609 A.2d 415. Therefore, plaintiff must also show by credible, objective evidence, that the injury has had a serious impact on the plaintiff's life. Ibid.
The narrow issue to be resolved by this motion is whether economic loss alone can provide a genuine issue of material fact necessary to demonstrate that plaintiff's injury has caused a serious impact on her lifestyle as required by Oswin. I find, even if plaintiff has submitted credible objective evidence of an injury as required by Oswin, a conclusion which I do not need to reach, plaintiff has failed to meet the threshold as to her injuries, since she has not raised a genuine issue of material fact as to whether those injuries have had a serious impact on her lifestyle. It is axiomatic that, under Oswin, any alleged injury must seriously impact the plaintiff's lifestyle. Ibid. Plaintiff attempts to satisfy the "serious impact" test by demonstrating that her injuries have caused economic loss since, as a result of the accident, she is no longer able to work her second job. However, there has been no certification or affidavit submitted as to any serious impact on plaintiff's social or recreational lifestyle as a result of the injuries suffered from the accident.
I find, as a matter of law, that economic loss alone cannot raise the fact issue necessary to demonstrate that plaintiff has suffered a serious impact on her lifestyle. The serious impact on lifestyle test must be viewed in terms of recreational and/or social limitations in the sense that a person is no longer as complete "physically" as he/she once was. In Dabal v. Sodora, 260 N.J. Super. 397, 401, 616 A.2d 1297 (App.Div. 1992) the court, in discussing the serious impact question, found the test to be "a plaintiff's loss of the physical ability to continue to engage in a social or recreational activity which had been a significant and important component of that plaintiff's way of life." Id. See also, Moreno v. Greenfield, 272 N.J. Super. 456, 640 A.2d 335 (App.Div. 1994).
*622 I realize that what is a serious impact on lifestyle for one person may be of little significance to others. Some examples of serious impact on a lifestyle could be the inability to do household chores, yard work, care for children, to participate in sporting activities, recreational activities and/or hobbies. This determination does not go so far as to say that the inability to work can never be a factor under the serious impact test. The inability to work for some people could be considered to be serious impact on his/her lifestyle where the plaintiff certifies, for example, that he/she derived satisfaction and enjoyment from work. However, in this case, plaintiff's claim that her life was seriously impacted did not stem from the fact that she derived satisfaction from working a second job. Rather, her claim was for the economic loss she suffered as a result of not being able to work. Where the serious impact alleged is purely economic, such as lost income, plaintiff does not meet the serious impact test.
This holding is consistent with the No Fault Act, since plaintiff, even though failing to meet the verbal threshold, may still maintain a suit for economic losses excluding, of course, any medical deductible and co-payment not paid under the PIP coverage of her insurance policy. See Roig v. Kelsey, 135 N.J. 500, 641 A.2d 248 (1994).
For all the foregoing reasons, plaintiff's wage loss does not raise a genuine issue of material fact as to whether her alleged injuries seriously impacted on her lifestyle, a requirement for a claim for non-economic losses.
The plaintiff's claim for economic loss shall continue. Thus, partial summary judgment is granted to defendants, William Leach and National Car Rental, on the issue of non-economic damages.