764 A.2d 463 (2001)
336 N.J. Super. 198
Marie R. NATALE and Gregory Natale, Plaintiffs-Appellants,
v.
Michele H. KISLING and GECAL, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued November 27, 2000.
Decided January 9, 2001.
George A. Mauro, Jr., Somerville, argued the cause for appellants (Mauro, Savo, Camerino & Grant, attorneys; Mr. Mauro, on the brief).
John T. Bazzurro, Red Bank, argued the cause for respondents (Wolff, Helies, Duggan, Spaeth & Lucas, attorneys; Mr. Bazzurro on the brief).
Before NEWMAN and WELLS.
This opinion of the court was delivered by WELLS, J.A.D.
Plaintiff, Marie Natale, suffered personal injury as the result of a rear end motor vehicle collision on November 9, 1996. In the lawsuit which followed defendant asserted that the action was barred by N.J.S.A. 39:6A-8, the verbal threshold statute and, after discovery was complete, filed a motion to dismiss on that ground. *464 The motion judge granted the motion and dismissed the complaint. Upon careful consideration of the record and the applicable law, we reverse.
The record, which must be considered in a light most favorable to plaintiff, reveals the following facts. The car that rear-ended Natale was driven by defendant Michele Kisling, and owned by defendant GECAL. According to Natale's deposition testimony, she was thrown forward, her knees hit the driver's side door, and her chest hit the steering wheel. Although plaintiff told the police officer who arrived at the accident scene that her neck and knee were painful, she declined to go to the hospital, and instead drove herself and her children home.
Two days later, however, Natale visited her family physician, Dr. Anthony Frisoli, complaining of continuing pain in her neck and right knee. Dr. Frisoli noted that Natale had swelling and marks on her knee, for which he prescribed Naprosin. He sent her for x-rays of her neck, shoulder and knee, which revealed that the she had suffered no bone fractures as a result of the accident.
In February 1997, Natale was examined by Dr. Norman M. Heyman, an orthopedic surgeon. Dr. Heyman noted that Natale, as of February 1997, was still reporting pain in her head, neck, shoulder and right knee. He concluded that Natale was suffering from acute cervical strain and sprain, acute lumbosacral strain and sprain, contusion with overload to both shoulders, contusion with overload to both hands, contusion of the right knee, and an aggravation of her pre-existing hand arthritis. Dr. Heyman opined that these diagnoses were causally related to the accident of November 9, 1996, but noted that it was at that point too early to discuss whether plaintiff's disability was permanent. After a few office visits, Dr. Heyman did report that the physical therapy that he had prescribed appeared to be working fairly well, reducing the plaintiff's muscle spasm and increasing the range of motion in her neck.
Following the initiation of this lawsuit, however, Dr. Heyman again examined Natale. On September 26, 1999, he issued a report in which he stated that she still complained of persistent neck and back pain, and exhibited decreased range of motion and muscle holding in the back, and muscle holding, decreased range of motion, and spasm in the neck. Due to the fact that these symptoms persisted after three years, and despite rehabilitative therapy, the doctor concluded at that time that Natale's disabilitywhich he once again attributed to the accident of November 9, 1996was probably permanent.
Natale's deposition testimony relates the manner in which her accident-related disability has impacted her life. According to her, she attended a gym three times a week as part of her rehabilitative regimen, using a treadmill and doing sit-ups and other exercises. Natale testified that she has pain in her neck, back and knees, and must take several Advil every day. She also asserted that she can no longer wash floors, vacuum, do laundry or do other household chores, and that her husband and children have to do these chores for her. She noted that she now is unable to go on trips in the car with her family to Canada, or to the shore, which she was previously able to do so. Natale also testified that she and her husband now only have sex once a month, when prior to the accident, they averaged once every other day. Natale also noted that she no longer works overtime at her job as a manual laborer. According to her testimony, prior to the accident she would often work twenty-two hours of overtime per week, never once turning down the opportunity to take extra hours, but has not since the accident been physically able to do so.
The motion judge held that the proofs presented an issue of fact with respect to the first prong of Oswin v. Shaw, 129 N.J. 290, 609 A.2d 415 (1992). He held, however, that they were insufficient to raise such *465 an issue on the second, or subjective prong. That is, there was little evidence of a serious impact on the plaintiff's life.
Plaintiff raises for our consideration four areas which she contends demonstrate such an impact: (1) the effect of the injury on her sex life; (2) the loss of her ability to work overtime; (3) the loss of her ability to do many household chores; and (4) her inability to take long automobile vacation trips.
Our case law treats loss of sexual activity in verbal threshold cases as being an important signifier of "serious impact" for Oswin purposes, especially when the loss of sexual activity is combined with loss of overtime or other economic loss. In Cineas v. Mammone, 270 N.J.Super. 200, 211, 636 A.2d 1071 (App.Div.1994), we found that an accident which decreased a plaintiff's ability to have sexual relations, when combined with loss of overtime and inability to perform household chores, had impacted the plaintiff's life sufficiently to overcome summary judgment under the Oswin test. Likewise, Cavanaugh v. Morris, 273 N.J.Super. 38, 41, 640 A.2d 1192 (App.Div.1994) also held that, where loss of marital relations was coupled with a complete inability to work outside the home, summary judgment should be denied.
In the case at hand, Natale has offered evidence of a material decrease in marital relations, coupled with an inability to work overtime and other limitations on her life. When ruling, the motion judge did not give any attention to this issue. We hold that the cases cited require serious consideration in the overall evaluation of this case.
In Shorter v. Leach, 277 N.J.Super. 617, 650 A.2d 16 (Law Div.1994), the court held that loss of ability to work, by itself, cannot be enough to support the contention that an accident-related injury has created a "serious" impact on a plaintiff's life. According to Shorter, 277 N.J.Super. at 621, 650 A.2d 16, "as a matter of law ... economic loss alone cannot raise a fact issue necessary to demonstrate that plaintiff has suffered a serious impact on her lifestyle." However, several cases have held that, where the inability to work is combined with some lifestyle limitation, summary judgment will be denied. For example, in both Cineas v. Mammone, 270 N.J.Super. 200, 211, 636 A.2d 1071 (App. Div.1994) and Cavanaugh v. Morris, 273 N.J.Super. 38, 41, 640 A.2d 1192 (App.Div. 1994), already discussed above, we found that serious impact existed when loss of ability to work was combined with loss of sexual activity. Likewise, in Owens v. Kessler, 272 N.J.Super. 225, 639 A.2d 738 (App.Div.1994), a serious impact was found where plaintiff's injury both impeded his ability to work and also interfered with his ability to engage in competitive sports and complete his G.E.D.
The above cases can be compared to situations such as those in Phillips v. Phillips, 267 N.J.Super. 305, 631 A.2d 564 (App.Div.1993), where summary judgment was upheld when the plaintiff was able to return to work after an automobile accident after an absence of only three weeks, or Sherry v. Buonansonti, 287 N.J.Super. 518, 671 A.2d 606 (App.Div.1996), where plaintiff's restrictions in lifting at his retail management job were not deemed serious enough to deny summary judgment.
Here Natale offered evidence that prior to the accident she had never once turned down overtime, often taking 22 hours per week. Since, however, she has been unable to take any overtime at all, as a result of her injuries. This restriction on her inability to work overtime has persisted since the accident, which occurred in 1996. Clearly, this is not temporary, as in Phillips, nor can it rationally be placed in a category with the Sherry plaintiff's injuries, which only restricted the plaintiff's ability to push and pull heavy objects, but not his total work hours. Ibid. Instead, Natale most closely resembles the plaintiff in Cineas v. Mammone, 270 N.J.Super. 200, 636 A.2d 1071 (App.Div.1994). That plaintiff testified that, due to his injuries, he was no longer able to work overtime, *466 and also claimed that his marital relations were reduced.
Several verbal threshold cases have touched upon the issue of whether an accident which has resulted in the plaintiff's inability to perform household chores will pass the "serious impact" prong of Oswin. Shorter v. Leach, 277 N.J.Super. at 622, 650 A.2d 16 noted that "Some examples of serious impact on a lifestyle could be the inability to do household chores." This statement was borne out in, once again, Cineas v. Mammone, 270 N.J.Super. 200, 636 A.2d 1071 (App.Div.1994), where the plaintiff asserted inability to perform household chores contributed to the reversal of summary judgment. However, in Brooks v. Odom, 150 N.J. 395, 696 A.2d 619 (1997), a Tort Claims Act case under N.J.S.A. 59:9-2(d), the Supreme Court upheld summary judgment on a claim of "permanent loss of bodily function," analogous to a type 6 injury under N.J.S.A. 36:6A-8, when the only claimed loss was an inability to do housework without pain. Although it is not clear which type of injury Natale alleges here, Brooks does seem to suggest that, where a plaintiff alleges only a difficulty in performing housework, summary judgment would be appropriate. This, however, is not the situation at hand, where Natale has alleged four separate types of impact upon her life. In the instant case, we deem it appropriate to consider her inability to perform housework as part of the totality of circumstances, but not dispositive of the serious impact prong of Oswin by itself. That having been said, however, Natale's difficulty with housework only serves to bolster her contention that this case was best left to a jury, and should not have been decided on summary judgment.
Our case law has also found that a serious impact on lifestyle can be found where the plaintiff is unable to perform recreational activities that were once an integral part of their lives. For instance, in Dabal v. Sodora, 260 N.J.Super. 397, 616 A.2d 1297 (App.Div.1992), a factual issue was found regarding seriousness of impact on plaintiff's life when the plaintiff had been rendered unable to go dancing, as a result of her injury, when dancing had been one of her primary recreational activities. Likewise, summary judgment was defeated in Owens v. Kessler, 272 N.J.Super. 225, 639 A.2d 738 (App.Div.1994) partially because the plaintiff, a former athlete, was no longer able to engage in competitive sports.
Here, Natale asserts that she once enjoyed trips to Canada and Wildwood, but can no longer take them. Although this is evidence that her recreational activities have been somewhat curtailed, we cannot conclude that these activities were ever as integral to her life as the dancer in Dabal or the athlete in Owens. It appears these trips were simply occasional excursions, and not part of the fabric of Natale's life. Therefore, we conclude that the fact that she can no longer take trips to Canada or Wildwood does not aid consideration of the serious impact prong.
In summary, Natale has offered three rather important impacts on her life; substantial loss of sex, loss of overtime, and inability to perform housework. We hold that, under these circumstances, it is most consistent with the prevailing law to rule that fact questions exist on the issue of serious impact. For this reason the motion should have been denied.
Reversed and remanded.