808 A.2d 868 (2002)
354 N.J. Super. 578
Maria C. RIOS, Plaintiff-Respondent,
v.
Joseph SZIVOS, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued October 8, 2002.
Decided November 6, 2002.
*869 John G. Tinker, Cedar Knolls, argued the cause for appellant (Leary, Bride, Tinker & Moran, attorneys; Mr. Tinker, of counsel; David J. Dering, on the brief).
Robert A. Hofmann, New Brunswick, argued the cause for respondent (Kogos & Hofmann, attorneys; Mr. Hofmann, on the brief).
Before Judges STERN, COLLESTER and ALLEY.
The opinion of the court was delivered by STERN, P.J.A.D.
We granted leave to appeal to consider whether a treating physician's certificate, in compliance with N.J.S.A. 39:6A-8(a), is, by itself, sufficient to satisfy the "verbal threshold" (now properly called the "[l]imitation on lawsuit option") and warrants a jury trial on plaintiff's suit for non-economic losses under the Automobile Insurance Cost Reduction Act of 1998 ("AICRA" or "the Act"), N.J.S.A. 39:6A -1 to -35, as amended by L. 1998, c. 21, in a case in which plaintiff claims to have suffered "a permanent injury."
We hold that the trial judge erroneously concluded that the providing of a certificate, by itself, required the denial of defendant's motion for summary judgment. We do so because the legislative history resulting in the adoption of AICRA, see e.g., Weidner and Canavan, "The `New' Verbal Threshold: But Is It Improved," 24 Seton Hall Leg. J. 117, 124-136 (1999), evidences a legislative intent to decrease the number of cases crossing the threshold and proceeding to trial, and, consequently, lower the number of judgments for non-economic loss, thereby reducing automobile insurance costs. We conclude, as did the Law Division in Rogozinski v. Turs, 351 N.J.Super. 536, 799 A.2d 41 (2002), that
[b]ecause AICRA reflects an intention to `tighten' the threshold and further restrict lawsuits arising from automobile accidents to claims for injuries that are permanent and serious, AICRA does not reflect an intention to modify the essential holdings of Oswin v. Shaw, [129 N.J. 290, 609 A.2d 415 (1992) ]. Therefore, the plaintiff must show, by the presentation of objective credible evidence, that the injuries come within one of the categories of injuries defined in the amendatory legislation. In addition, the plaintiff must show that the injuries have had a serious impact upon the plaintiff's life.
[Rogozinski, supra, 351 N.J.Super. at 549, 799 A.2d 41.]
As to the preservation of the "serious impact" requirement, see also James v. Torres, 354 N.J.Super. 586, 808 A.2d 873 (App. Div.2002).
Given AICRA's intention to retain the Oswin summary judgment model, the certificate of plaintiff's physician asserting permanency, and filed under N.J.S.A. *870 39:6A-8(a), does not by itself preclude summary judgment.

I.
On August 4, 1999, the parties were involved in a motor vehicle accident. As a result, plaintiff claims to have suffered "disc bulges [at] L4-L5 and L6-S1," as well as an aggravation of a "herniated disc [at] L5-S1" previously sustained in a 1996 work related accident. At the time of the prior accident, a lumbar magnetic resonance imaging ("MRI") revealed that Rios suffered a "small central protrusion [at] L5-S1."
Following the 1999 accident, plaintiff received medical treatment, including physical therapy, from several health care providers. She also filed a Physician's "Certification Pursuant to Automobile Insurance Cost Reduction Act of 1998," as required by AICRA, N.J.S.A. 39:6A-8(a), in this action. Therein, Dr. John Hochberg certified:
1. I am a licensed physician of the state of New Jersey and was a treating physician for automobile-related injuries incurred by Maria C. Rios resulting from an accident on Au[g]ust 4, 1999.
2. Based upon my professional expertise and the findings in the attached report including reference to clinical objective findings and/or objective medical test, it is my opinion that, within a reasonable degree of medical probability, my patient has sustained permanent injury with significant disfigurement or significant scarring that will have permanent residual sequelae.
3. Based on objective medical testing, my patient had an MRI on December 6, 1999 which revealed L4-5 bulge with flattening of the disc space.
4. It is my further opinion, within a reasonable degree of medical probability, that although further treatment in the future may alleviate some symptomatology, the permanent residuals of the injury cannot be completely resolved by the way of further treatment intervention and there will be some aspect of residual permanent injury experienced for the balance of my patient's life.
5. I affirm that the above conclusions are true to the best of my knowledge and belief, and I am aware that I am subject to punishment as outlined in the Automobile Insurance Cost Reduction Act if any statements are made with fraudulent intent to misrepresent the residual aspects of my patient's injury.[1]
Defendant moved for summary judgment. He claimed that, under N.J.S.A. 39:6A-8, plaintiff had the burden of proving the aggravation of a preexisting injury by objective, credible medical evidence. He also asserted that plaintiff failed to meet the burden. Plaintiff countered that "the doctor's certification alone creates a question of fact" and that, in any event, the denial of summary judgment was warranted because "the previous MRI," following the 1996 accident, showed no bulge at L4-5, and Dr. Hochberg's opinion was "based not just on the [plaintiff's] subjective *871 complaints." Hence, plaintiff argued that summary judgment had to be denied.
The motion judge denied summary judgment. He concluded that AICRA "essentially rules out almost all motions for summary judgment once the doctor says that the condition is ... objectively ... manifested by some objective evidence, and causally related to the accident, and indicates that the condition is ... permanent in the sense that it will not be cured ... by further treatment."

II.
In 1997, New Jersey's legislative and executive branches sought to reform the no-fault system. See Weidner and Canavan, supra, at 124-25. The Legislature created the Joint Committee on Automobile Insurance Reform ("Committee") to develop comprehensive reforms to the no-fault law, including the verbal threshold. The Committee's primary task was to lower the cost of automobile insurance. See Testimony From the Commissioner of Banking and Insurance and Invited Witnesses Before the Joint Committee on Automobile Insurance Reform (February 23, 1998)(testimony of Elizabeth E. Randall, Commissioner of the New Jersey Department of Banking and Insurance). Governor Whitman issued a conditional veto of the first bill (S-3) to pass both houses. See Conditional Veto Message of Governor Whitman for Senate Bill No. 3 (April 27, 1998). A substituted bill was thereafter passed by both houses, and on May 19, 1998, Governor Whitman signed the bill. As thus enacted, AICRA took effect for all insurance policies issued on or after March 22, 1999.
AICRA revamped New Jersey's no-fault law. Among other things, it established new medical protocols, alternative dispute resolution procedures and the Office of Fraud Prosecutor. The new statute also provides for personal injury protection ("PIP") coverage, a "[l]imitation on lawsuit option," N.J.S.A. 39:6A-8(a), and a "[n]o limitation on lawsuit option," N.J.S.A. 39:6A-8(b). As to the former, which is applicable in this case and which results in lower premium costs, N.J.S.A. 39:6A-8(a) provides that only those who meet the verbal threshold may sue for non-economic loss, and may do so only when they have "sustained a bodily injury which results in [1] death; [2] dismemberment; [3] significant disfigurement or significant scarring; [4] displaced fractures; [5] loss of a fetus; or [6] a permanent injury within a reasonable degree of medical probability, other than scarring and disfigurement." (emphasis added.) The statute further provides that "[a]n injury shall be considered permanent when the body part or organ, or both, has not healed to function normally and will not heal to function normally with further medical treatment." N.J.S.A. 39:6A-8(a). In order to overcome the "tort option" or threshold, AICRA also requires that:
[T]he plaintiff shall, within 60 days following the date of the answer to the complaint by the defendant, provide the defendant with a certification from the licenced treating physician or a board-certified licensed physician to whom the plaintiff was referred by the treating physician.
[N.J.S.A. 39:6A-8(a).]
The physician certification must "state, under penalty of perjury, that the plaintiff has sustained an injury described" in the statute and must "be based on and refer to objective clinical evidence, which may include medical testing ... performed in accordance with medical protocols." N.J.S.A. 39:6A-8(a). Finally, with respect to the threshold, AICRA provides that:
A person is guilty of a crime of the fourth degree if that person purposefully *872 or knowingly makes, or causes to be made, a false, fictitious, fraudulent, or misleading statement of material fact in, or omits a material fact from, or causes a material fact to be omitted from, any certification filed pursuant to this subsection.
[N.J.S.A. 39:6A-8(a).][2]
III.
In light of the legislative history, we reject the contention (see Baker, "How Insurance Reform Affects No-Fault Cases," 155 N.J.L.J. 332 (Jan. 25, 1999), supp. at 4) that the statute, requiring a physician to certify permanency, under penalty of perjury, establishes a prima facie case which provides enough evidence to warrant a trial. First of all, the statement to the bill expressed that the new threshold was designed to "limit the number of lawsuits filed and thereby reduce premiums for bodily injury coverage." It also stated that the bill "substitutes a new verbal threshold which is intended to eliminate some of the lawsuits for minor injuries, including soft tissue injuries, which are neither serious nor permanent." The statement further made clear that "[n]o provision in this bill is intended to repeal otherwise applicable case law." In light thereof and in light of the legislative purpose, it cannot be fairly doubted that Oswin survives the new legislation, notwithstanding the required certification.
Moreover, in her conditional veto, the Governor stated that "[t]he certification is intended as an anti-fraud measure to assure legitimacy; it is necessary to state a claim, not sufficient to establish one, and will be subject to challenge through the normal discovery and summary judgment processes." See Governor's Recommendations for Reconsideration Statement to Senate Bill 3, at 5 (April 27, 1998). Given the special features of N.J. Const. Art. V, § 1, ¶ 14, providing for conditional vetoes, the adoption of a statute following a conditional veto is "strong evidence of legislative intent [because] it led directly to the legislation we are called upon to construe." Oswin, supra, 129 N.J. at 308, 609 A.2d 415. See also N.J. Coalition of Health Care v. DOBI, 323 N.J.Super. 207, 238, 732 A.2d 1063 (App.Div.), certif. denied, 162 N.J. 485, 744 A.2d 1208 (1999). Hence, the legislative history reflects an intent to supplement the existing summary judgment procedure with a certification as an additional mechanism to reduce the number of lawsuits by deterring plaintiff's doctors from falsely supporting a claim.
We thus agree with Judge Yannotti in Rogozinski, supra, 351 N.J.Super. at 551-54, 799 A.2d 41, that the filing of a certification by itself is not enough to preclude summary judgment. As he said:
There is nothing in AICRA that suggests that the certification will be sufficient basis for the plaintiff to raise a genuine issue of material fact as to whether the plaintiff meets the threshold. To the contrary, in her conditional veto message, Governor Whitman stated that the verbal threshold certification is intended in part as an anti-fraud measure to ensure the legitimacy of the plaintiff's claim. The Governor explained that the certification is necessary to state a claim, not establish a claim and the certification will be subject *873 to the usual discovery and summary judgment process.
Indeed, the certification is merely a statement of a conclusion, by a board certified physician, that the plaintiff has sustained an injury that falls within one of the categories of injuries in the statutory threshold. As the statute provides, the certification must be based upon and refer to objective clinical evidence. The factual basis of the certification may, however, be called into question. The conclusion that the plaintiff has sustained a permanent injury as defined in the law may be subject to challenge. All of these issues may properly be raised by the defendant on a motion for summary judgment.
Therefore, in order to survive a motion for summary judgment under the limitation on lawsuit threshold, the plaintiff must raise a genuine issue of material fact as to whether the plaintiff sustained an injury that meets the statutory threshold. R. 4:46-2(c). The plaintiff must show that the injury is a serious injury. To do so, the plaintiff must present objective credible evidence to support the claim. In addition, the plaintiff must show that the injury has had a serious impact on the plaintiff's life. If the plaintiff fails to raise a genuine issue of material fact on these issues, the Court may grant summary judgment in favor of the defendant. Brill v. Guardian Life Insurance Co., 142 N.J. 520, 540, 666 A.2d 146 (1995).
[Rogozinski, supra, 351 N.J.Super. at 551-52, 799 A.2d 41.][3]
Accordingly, we reject the trial judge's conclusion that Dr. Hochberg's certification, by itself, precluded summary judgment.

IV.
In rendering his decision in this case, the motion judge stated it was "probably... the type of case that I would've allowed to continue on, even under the old verbal threshold, in light of the prior injuries and the aggravation." We do not pass on that question. Rather, we reverse the determination that the certification was sufficient to preclude judgment and remand for reconsideration in light of this opinion and James v. Torres, 354 N.J.Super. 586, 586 A.2d 873 (App.Div.2002).
NOTES
[1] Neither party has supplied any "attached report" to the certification, which was reproduced in both appendices. The appendices do contain other reports, including two letters from Dr. Hochberg to plaintiff's counsel. It is not clear from the appendices, however, which reports were appended to plaintiff's answers to interrogatories or her brief in opposition to the motion for summary judgment. But see R. 2:6-1(a), regarding appendices on appeal from the grant of summary judgment. It may be the former in light of an inference which flows from the listing of items in defendant's "contexts of appendix." Plaintiff's brief fails to contain an index to her appendix. But see R. 2:6-1(c) (need for table of contents to appendix).
[2] As an added deterrent to the filing of false reports, the Legislature created a presumption of imprisonment notwithstanding the degree of crime. See N.J.S.A. 2C:44-1(d),(e); N.J.S.A. 39:6A-8(a). It must be recognized that the difficulties in proving the rendering of a false opinion should make such prosecutions few in number. See, e.g., State v. Fuchs, 60 N.J. 564, 292 A.2d 10 (1972).
[3] We do not read this passage to be inconsistent with the observation of Craig & Pomeroy, New Jersey Auto Insurance Law (Gann 2002) § 15:4-1 that "[o]ne significant impact of the certification requirement may well be to reduce, in significant measure, the summary judgment motion practice as established under Oswin v. Shaw."