799 A.2d 721 (2002)
352 N.J. Super. 200
Harold COMPERE, Plaintiff,
v.
James T. COLLINS, Jr., Defendant.
Superior Court of New Jersey, Law Division, Union County.
Decided February 22, 2002.
Anthony Prieto, for plaintiff, (Druckman & Hernandez, P.C., attorneys).
Judith Korolowicz, for defendant, (Law Offices of Doreen M. Ryan, attorneys).
LYONS, J.S.C.
In this motor vehicle accident case, defendant has moved for remittitur, or in the *722 alternative, for a new trial following a jury verdict for plaintiff in the amount of $200,000. Defendant claims that (1) the verdict was against the weight of the evidence; (2) the verdict was shocking and excessive; (3) the verdict was a miscarriage of justice under the law; and (4) the court did not correctly charge the jury.
This matter arises from a November 26, 1999 motor vehicle accident that occurred in Roselle, New Jersey. Plaintiff claimed that defendant did not properly observe a stop sign and collided with plaintiff, causing injuries to plaintiff.
At the time of the accident, plaintiff was covered under a policy of automobile insurance issued after March 22, 1999. Pursuant to that policy, plaintiff was subject to the new limitation on lawsuit threshold, found in the Automobile Insurance Cost Reduction Act, N.J.S.A. 39:6A-8a, approved May 19, 1998 (hereinafter "AICRA"). N.J.S.A. 39:6A-8a in pertinent part, prohibits suits for noneconomic damages unless an injury falls within one of six categories. At issue here is the last category. It reads,
... a permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement. An injury shall be considered permanent when the body part or organ, or both, has not healed to function normally and will not heal to function normally with further medical treatment.
[N.J.S.A. 39:6-A-8a.]
Defendant complains that the court did not charge Oswin v. Shaw, 129 N.J. 290, 609 A.2d 415 (1992). In particular, defendant on this motion argues that the court should have charged the "subjective" prong of the Oswin test, requiring plaintiff to prove that the injury had a serious impact on the plaintiff and his life.[1] The court has found no reported cases on this point.
An analysis of defendant's claim with respect to the requested Oswin charge, requires a review of Oswin v. Shaw 129 N.J. 290, 609 A.2d 415 (1992) and the legislative history of AICRA. In Oswin, supra, our Supreme Court addressed New Jersey's then existing no fault automobile insurance statute. That statute, N.J.S.A. 39:6A-8a, limited those who elected the so called verbal threshold to suits where:
... that person has sustained a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or medically determined injury or impairment of a nonpermanent nature which prevents the injured person from performing substantially all of the material acts which constitute that person's usual and customary daily activities for not less than ninety days during the one hundred and eighty days immediately following the occurrence of the injury or impairment...
[N.J.S.A. 39:6A-8a]. (Hereinafter the "pre-AICRA" statute).
The Oswin Court dealt with the questions of whether verbal threshold cases would follow a summary judgment model and whether the plaintiff's disability in that case fell within one of the nine categories *723 of the verbal threshold statute set forth above. Id.
The Oswin Court, in reviewing the history of the pre-AICRA statute, noted that the statute was patterned after a similar statute from New York. Oswin, supra at 303, 609 A.2d 415. Moreover, the Court found that the pre-AICRA statute, based on its legislative history, was to be construed so that only plaintiffs with a "serious injury" would be permitted to sue. Oswin, supra at 315, 609 A.2d 415. The Court also stated that the pre-AICRA statute was to be construed consistently with the New York Court of Appeals' decision in Licari v. Elliott, 57 N.Y.2d 230, 455 N.Y.S.2d 570, 441 N.E.2d 1088 (1982). Id. The Court found that the pre-AICRA statute did not have an explicit requirement of serious injury, but instead only included the nine injury type categories set forth in the statute. New York, on the other hand, included a specific requirement that the injury be "serious" and then used those same nine categories found in New Jersey's pre-AICRA statute to define a serious injury in its statute. Id.
In analyzing whether the plaintiff's injuries in Oswin met the verbal threshold, the Court stated that "unlike the New York statute, which requires `serious injury', New Jersey's no-fault statute does not expressly use that term, requiring only that the injury fit one of the specified types." Oswin, supra at 315, 609 A.2d 415. The Court went on to say that, "[t]he distinction is of some moment only because the New York statute defines `serious injury' with a list of nine types of injuries that is identical to the list used in the New Jersey statute; a plaintiff who sues under the New York statute merely alleges a `serious injury', often without specifying the type of the injury." Id. The Oswin Court then concluded that, "[b]ecause the New Jersey no-fault statute is based on New York's, we use the standards set in Licari, supra (citation omitted), for evaluating plaintiff's injuries." Id. The Court then found that the pre-AICRA statute required compensable injuries to be serious. Id.
The Oswin Court, after looking to the New York statute and its caselaw, adopted a three prong test which a plaintiff would have to meet to sue for category six, seven and eight type injuries. The first prong requires objective evidence of an injury related disability. Oswin, supra at 318, 609 A.2d 415. Second, the plaintiff must show a nexus between the injury and the disability. Id. Lastly, the injury must have a serious impact on the plaintiff and his or her life. Oswin, supra at 319, 609 A.2d 415. The Court went on to note that with respect to the last prong, "[t]hat requirement seems to comport with the New York cases." Oswin, supra at 318, 609 A.2d 415.
A reading of Oswin makes it clear that our Supreme Court found the pre-AICRA statute was adopted from New York and that, as the Oswin Court said, "the legislative adoption of a foreign statute includes judicial interpretations of that statute at the time of adoption." Oswin, supra at 309, 609 A.2d 415. The three prong Oswin test with respect to the pre-AICRA statute, therefore, is based on the language of the New York statute and New York caselaw.[2]
In 1998, legislation was introduced in New Jersey to address the problems of the *724 pre-AICRA no fault law. A comprehensive fifty-six page bill was introduced as S-3 in the New Jersey Senate on April 2, 1998. S. 3, 208th Leg. (N.J.1998). This legislation revised the pre-AICRA verbal threshold statute removing the nine categories and providing instead that lawsuits would be prohibited unless:
that person has sustained a bodily injury which results in death; dismemberment; significant disfigurement or significant scarring; displaced fractures; loss of a fetus; or a permanent injury within a reasonable degree of medical probability other than scarring or disfigurement. An injury shall be considered permanent when the body part or organ, or both, has not healed to function normally and will not heal to function normally without further medical treatment.
[S. 3, 208th Leg. at 21 (N.J.1998) ].
The last category, the permanent injury category, tracks the Florida verbal threshold statute identically. Oswin, supra at 305, 609 A.2d 415. AICRA dispensed with the definitions of categories six, seven, eight and nine, which the Court in Oswin found had come from the New York statute.
In addition to redefining the categories necessary to cross the threshold for suit, the AICRA statute provided that within sixty days following the defendant's filing of an answer, the plaintiff must provide the defendant with a certification from a licensed treating physician or board certified licensed physician to whom the treating physician referred the plaintiff. The certification shall state, under penalty of perjury, that the plaintiff has sustained an injury described in AICRA. The certification shall be based on and refer to objective clinical evidence, which may include medical testing, except that any such testing shall be performed in accordance with medical protocols pursuant to law and the use of valid diagnostic tests administered in accordance with the statute. The testing cannot be experimental in nature or depend entirely upon subjective patient response. S. 3, at 21. A fourth degree crime was established for purposely or knowingly making or causing to be made a false, fictitious, fraudulent or misleading statement in such a certification. Id.
In the Statement attached to S-3, the provisions outlined above were discussed. The Statement reads in pertinent part:
Finally, in order to further limit the number of law suits filed and thereby reduce premiums for bodily injury coverage, the bill completely eliminates the existing verbal threshold and substitutes a new verbal threshold which is intended to eliminate some of the lawsuits for minor injuries, including soft tissue injuries, which are neither serious nor permanent. The new threshold would permit suits in the event of death, dismemberment, significant disfigurement or significant scarring, displaced fractures, loss of a fetus, or permanent injuries other than significant disfigurement or significant scarring if the injury is permanent to the extent that the body part or organ system has not healed to function normally and will not heal to function normally with further medical treatment. Certification by a licensed treating physician that the body part or organ system has not healed to function normally and will not heal to function normally would be necessary before suit was filed. The certification would have to be based on objective clinical evidence which would include medical testing. Fraudulent certification by a physician would be a crime of the fourth degree. No provision in this bill is intended to repeal otherwise applicable caselaw. (Emphasis added).
[S. 3, 208th Leg. at 59 (N.J.1998) ].
*725 A similar bill was introduced in the Assembly as No.1970 on April 16, 1998 and contained the same provisions discussed above in S-3. Assem.1970, 208th Leg. (N.J. 1998). Both bills contained legislative findings in the first section of the bills which noted that:
Whereas, to meet these goals, this legislation provides for the creation of two insurance coverage options, a basic policy and a standard policy, provides for cost containment of medical expense benefits through a revised dispute resolution proceeding, provides for a revised lawsuit threshold for suits for pain and suffering which will eliminate suits for injuries which are not serious or permanent, including those for soft tissue injuries, would more precisely define the benefits available under the medical expense benefits coverage and establishes standard treatment and diagnostic procedures against which the medical necessity of treatments reimbursable under medical expense benefits coverage would be judged. (Emphasis added).
[S. 3, 208th Leg. (N.J.1998) ].
The Governor, on April 27, 1998, after receiving the bill, filed a conditional veto and in doing so analyzed the legislation. On page three of her message, she noted:
The 1988 threshold has not worked. By allowing recovery for injuries that are nonpermanent, i.e., that heal, and for fractures that are not serious, the statute has not served as a meaningful limitation to control premium costs. Because the substantive standards are so nebulous, moreover, they have encouraged the employment of extensive and superfluous medical and chiropractic testing and treatment in order to establish standing to sue for pain and suffering. The substantial increase, since 1988, in the cost of medical expense benefits, is the best indication that these benefits have been manipulated in order to frustrate the intent of the lawsuit threshold.
Senate Bill No. 3 replaces the existing lawsuit threshold under which temporary non-serious injuries qualify, with the requirement that fractures be displaced and that other injuries be serious enough never to heal sufficiently to regain normal function. In other words, the injury must be to "a body part or organ" (as opposed to "tissue", which was consciously omitted from the definition in negotiations) and must be permanent in order for the injured party to have standing to sue. Our courts will, of course, interpret these terms in the context of those specific circumstances, and may look to the laws of other States in construing New Jersey's verbal threshold. It should be noted therefore that Florida's permanent injury threshold differs from the proposed standard in several decisive ways. First, Florida law does not define "permanent injury"; there is no requirement, in other words, that the injury be to a "body part" or "organ" and be serious enough never to heal to regain normal function. Secondly, it has been noted that in Florida "51% of the plaintiffs who had succeeded [in meeting the threshold] had done so on the basis of medical reports and rating of pain was based only on subjective complaints of pain." Oswin v. Shaw, 129 N.J. 290, 319, 609 A.2d 415 (1992). The proposed standard is explicit that the medical conclusion may not be based on the subjective accounts of pain. Third, Florida law requires only "some evidence" of permanency, which Florida Courts have held can be provided by the patient alone. City of Tampa v. Long, 638 [So.]2d 35 (1994). Under the proposed standard, permanency must be attested by the treating physician under penalty of perjury, must *726 be based on objective clinical evidence, and may not rely upon experimental testing or subjective impressions of the patient.
In short, I am confident that, construed in light of the statute's clear purpose to limit standing for recovery for pain and suffering, the proposed lawsuit threshold represents a significant improvement over current law. The savings resulting from adoption of these measures will be substantial. (Emphasis added.)
At no point in the bills or in the Statement attached to the bills or in the Governor's message on her conditional veto, was the Oswin subjective prong that a plaintiff would need to prove a serious impact on his or her life mentioned. While the Governor used the word serious, she went on to define that word by saying that an injury would be serious if it would never heal sufficiently to regain normal function which is the definition in the statute for "permanent."
When the Governor signed the AICRA legislation on May 19, 1988, she noted in her message that the "new limitation on lawsuit option requires that injuries must be to a body part or organ, not just tissue, and must be permanent." Governor's Statement dated May 19, 1998.
The legislative history of AICRA, therefore, notes that AICRA was clearly not based on the New York statute or on New York caselaw. Rather, and quite the opposite, the legislative history clearly indicates that the language came from the Florida statutes. The New Jersey Legislature took the language of the Florida statute, then added a definition of permanency and required professional objective certification under penalty of perjury. The Legislature also noted that the bill completely "eliminates the existing verbal threshold and substitutes a new verbal threshold." S.3 at 59. The Governor dismissed the old statute as one that "has not worked." Governor's Conditional Veto Message. She noted S-3 "replaces the existing lawsuit threshold." Id. The legislative findings in the bill itself note that this statute is revising the lawsuit threshold for pain and suffering. It is clear to this court, therefore, that AICRA is not based on New York statutory law or caselaw which underpined the reasoning in Oswin.
Defendant argues that while the AICRA statute in no way requires explicitly that "the injury have a serious impact on the plaintiff and his or her life," the last line of the Legislature's Statement reads "[n]o provision in this bill is intended to repeal otherwise applicable caselaw." Defendant argues that this line requires the court to charge the Oswin serious impact on the plaintiff's life standard. This court does not agree.
First, in interpreting statutes, courts look first to the language of the statute to discover legislative intent. If the plain meaning of the language is clear, and unambiguous on its face, and admits of only one interpretation, then the court needs to explore no further. See, Watt v. Mayor and Council of the Borough of Franklin, 21 N.J. 274, 277, 121 A.2d 499 (1956); Hubbard ex rel. Hubbard v. Reed, 168 N.J. 387, 392, 774 A.2d 495 (2001). Where the Legislature has expressed its intention in plain language and the legislative history does not demonstrate a contrary purpose, the court is bound to follow the statutory provision as written. See, Raubar v. Raubar, 315 N.J.Super. 353, 360, 718 A.2d 705 (Law Div.1998). Moreover, there is no reason to consider legislative history when the statute itself is clear. It is axiomatic that absent a clear indication to the contrary, the language in the statute is to be read in accordance with its plain and ordinary meaning. See, Carpenter Technology Corp. v. Admiral Ins. Co., 335 N.J.Super. *727 510, 515, 762 A.2d 1066 (App.Div.), cert. granted, 167 N.J. 633, 772 A.2d 935 (2001). The courts are not at liberty to presume the Legislature intended something other than what it expressed by its plain language. Id. It is important to remember that the plain meaning of the language used by the Legislature cannot be ignored, it is the duty of courts to interpret not legislate. See, Wormack v. Howard, 33 N.J. 139, 143, 162 A.2d 846 (1960).
This court finds that the AICRA statute is clear. AICRA does not require a plaintiff to prove the injury had a serious impact on the plaintiff and the plaintiff's life. AICRA sets forth six categories which must be met before a person may sue for non-economic damages. With respect to the sixth category, the one at issue here, it not only sets forth the category type but provides a definition of "permanent" as well. As the language in the AICRA statute is clear and unambiguous, there is no need to look at the legislative history.
Nonetheless, the legislative history, in this court's opinion, further supports the court's conclusion. As noted above, the Legislative findings in AICRA make it clear that this is a revised statute. The Statement attached to the bill goes on to provide that not only is it a revised statute, but it completely eliminates the existing verbal threshold and substitutes a new verbal threshold. The Governor dismissed the old statute as one that has not worked and noted that this bill replaces the existing law. The legislative history, therefore, does not provide any support to defendant's argument that the subjective prong of the Oswin test must be charged with respect to the new statute. To paraphrase from Oswin, this court cannot avoid the eloquent silence of the statute in this case concerning the Oswin subjective prong. Oswin, supra at 308, 609 A.2d 415.
This court finds defendant's argument that the Legislature's Statement, attached to S.3, that reads "[n]o provision in this bill is intended to repeal otherwise applicable caselaw" is support for the inclusion of the Oswin charge to be without merit. The plain language of the statute does not support this argument because AICRA is not based on New York statutes and caselaw. Moreover, the legislative history also does not support this argument. Quite to the contrary, the legislative history shows that the statute was completely revised and replaced. Lastly, the language in the Statement itself does not support defendant's argument.
The language in the Statement says that pre-AICRA caselaw remains viable if "otherwise" applicable. Nonetheless, in order to be applicable, an opinion would have to relate appropriately to a provision in AICRA. Oswin was based on the nine categories and the "serious" component in the New York law. None of those provisions remain in AICRA. Those definitions are simply no longer in play. The soft tissue injuries discussed in Oswin are not addressed in this new statute, rather the operative term is a "permanent injury to a body part or organ." There well may be many pre-AICRA cases which would be applicable to AICRA. One need only review the statute to note that many provisions of the pre-AICRA statute were carried forward into the AICRA statute. It is clear that if identical language from the pre-AICRA statute was carried forward in a provision of AICRA, prior caselaw would follow. That is not the case here. This language of AICRA is completely new, not based on the New York law, not based on New York statutes, and not drafted with reference to Oswin.
It is clear that when the Legislature reenacts a statute which has been judicially construed, it adopts the prior *728 judicial interpretations. See, Walder, Sondak, Berkeley and Brogan v. Lipari, 300 N.J.Super. 67, 692 A.2d 68 (App.Div.) cert. den., 151 N.J. 77, 697 A.2d 548 (1997). However, that principle only applies when the reenacted statute adopts a piece of substantive legislation that makes no functional change to the past law. Id. That is not the case here. Here, there are clear functional changes. There are different categories, a certification procedure, a penalty for violation of same, an objective test set forth for permanency, and a standard of medical probability provided which must be used. It is also axiomatic that the Legislature is presumed to be aware, not only of its own prior legislative acts, but of relevant caselaw when it enacts statutes. See, Guzman v. City of Perth Amboy, 214 N.J.Super. 167, 174, 518 A.2d 758 (App. Div.1986). It is presumed therefore that the Legislature was fully aware of the requirements of Oswin and its "eloquent silence" on that point in AICRA cannot go unnoticed. See, Yacenda Food v. New Jersey Highway Authority, 203 N.J.Super. 264, 274, 496 A.2d 733 (App.Div.1985).
This court notes that various commentators on this topic have framed the issue of the applicability of the Oswin subjective standard to AICRA. See, Gerald H. Baker, How Insurance Reform Affects No Fault Cases, 155 N.J.L.J. 332 (1999); Thomas P. Weidner & Michael J. Canavan, The "New" Verbal Threshold: But Is It Improved? 24 Seton Hall Legis. J. 117 (1999); Gerald H. Baker, A Look At No Fault in 2001, 167 N.J.L.J. 255 (2002). In their treatise, Craig and Pomeroy note that AICRA, N.J.S.A. 39:6A-8a, was amended to eliminate the more subjective of the verbal threshold categories. Craig and Pomeroy, New Jersey Auto Insurance Law (Gann, 2002). These authors note that there is no indication of the quantum of reduction of function necessary to fall below the range of "normal". Id. at 23, 609 A.2d 415. But there is, however, no longer a requirement that the law involve "significant limitation" or "permanent consequential limitations." The authors pose the question of whether these changes were intended to effect a change in the substantial impact on lifestyle tests created in Oswin. Id. at 24, 609 A.2d 415. The authors do note, though, that the new verbal threshold in AICRA includes a major innovation which deals with the certification of licensed treating physicians based on objective clinical evidence. Craig and Pomeroy note "[t]he new statute requires only that a permanent injury not heal to function normally". Id. at 249, 609 A.2d 415. Moreover, they go on to say that AICRA "was also then amended to change the description of several categories of injuries which meets the threshold, eliminating the more subjective of the categories and the requirement that a threshold-breaching permanent injury be serious". Id. at 226, 609 A.2d 415. This is more evidence that defendant's efforts to bootstrap the word "serious" to find a requirement to charge Oswin is without merit.
The legislative history specifically rebuts Mr. Baker's argument that the Florida caselaw should be looked to. His argument that the "plain language" of AICRA is clear and does not speak to Oswin, however, appears supportable.
The Weidner and Canavan article makes a number of claims arguing that the Oswin test should be incorporated into the AICRA statute. See, Weidner and Canavan, supra at 8. First, it argues that without the Oswin test, permanent injury "as a definition will not reduce costs." Second, it argues that the legislative intent must be followed and that the intent was to reduce costs and, therefore, the Oswin test should be included. Third, it argues that twice in the preamble the words "permanent" and "serious" are used indicating *729 that the "serious test" under Oswin should be incorporated. Fourth, it argues the statute should be read in conjunction with the interpretations given in the New Jersey Torts Claims Act. Finally, it argues the language of the Legislative Statement and the continued viability of prior caselaw argues for reading Oswin into AICRA.
This court has already addressed the issues of the Legislative Statement. With respect to whether the definition as set forth will meet the goals of the Legislature, that is for legislative review and remedial legislation if necessary. The new statute focuses on permanent injuries and does not use the word serious. To conclude, however, that because the words serious and permanent are both used in the preamble, a court should equate the two and thereby require an Oswin jury charge is strained logic. When the categories in the AICRA statute are reviewed, it would appear that the word serious would be superfluous if inserted into each of the categories included in AICRA. A permanent injury within a reasonable degree of medical probability which requires an objective test, other than scarring or disfigurement, is by its very definition serious, when it is restricted to a body part or organ that has not healed to function normally and will not heal to function normally with further medical treatment. The other categories such as death and dismemberment are by their very terms serious. The word serious is not a talisman, which when used automatically, requires the Oswin charge. As outlined above, the word serious in Oswin was taken directly from the New York Statute and caselaw and is not found in this new statute. There is nothing in the legislative history to suggest reference should be made to the New Jersey Torts Claims Act. This court concludes, therefore, that the Legislature with its silence and the lack of any legislative history supporting its desire to include the Oswin subjective analysis did not intend to do so and this court, therefore, will not read it into the otherwise plain language of this statute.
Defendant has filed a motion pursuant to R. 4:49-1 seeking a new trial, or in the alternative, for a remittitur. Nothing in defendant's argument, however, speaks as to any alleged infirmity with respect to the verdict on the issue of liability. It appears that his only argument is that the damages awarded were excessive.
In Baxter v. Fairmont Food Co., 74 N.J. 588, 379 A.2d 225 (1977), Chief Justice Hughes discussed the issue of remittitur, as well as a trial judge's review of a jury's verdict for damages. The Court said that a trial judge should not interfere with the quantum of damages assessed by a jury unless it is so disproportionate to the injury and resulting disability shown as to shock his conscience and to convince him that to sustain the award would be manifestly unjust. Id. at 596, 379 A.2d 225.
Chief Justice Hughes held that the judge cannot validly intrude unless "it clearly and convincingly appears that there was a miscarriage of justice under the law." Id.; R. 4:49-1(a). He made it clear that judges are admonished to resist the natural temptation to substitute their judgment for that of the jury. Baxter, supra at 597, 379 A.2d 225. The judgment of the initial fact finder, here a jury, is entitled to considerable respect. Id. It should not be overthrown, except upon the basis of a carefully reasoned and factually supported and articulated determination, after canvassing the record and weighing the evidence, that the continued viability of a judgment would constitute a manifest denial of justice. Id. Trial courts, moreover, are cautioned by our Supreme Court that a judge is not a thirteenth and decisive juror and entitled to substitute his judgment for *730 that of the jury merely because he would have reached the opposite conclusion. Baxter, supra at 598, 379 A.2d 225. It is only upon the predicate of a determination that there has been a manifest miscarriage of justice that corrective judicial action is warranted. Id. As stated in Tramutola v. Bortone, 118 N.J.Super. 503, 518, 288 A.2d 863 (App. Div.), rev'd on other grounds, 63 N.J. 9, 304 A.2d 197 (1973), a jury verdict should only be overturned on the grounds of excessiveness, only with reluctance and never except in a clear case. See id. (citing Fritsche v. Westinghouse Electric Corp., 55 N.J. 322, 330, 261 A.2d 657 (1970)).
The court, therefore, must analyze the evidence in this matter, and in doing so, accept it in a light most favorable to the plaintiff. See, Caldwell v. Haynes, 136 N.J. 422, 432, 643 A.2d 564 (1994). It must accept the conclusion that the jury believed the plaintiff's injury claims and the testimony of the supporting witness and if, tested on such basis, the verdict (even if generous) has reasonable support in the record, the jury's evaluation should be regarded as final. See, Taweel v. Starn's Shoprite Supermarket, 58 N.J. 227, 236, 276 A.2d 861 (1971), (rev'd on other grounds, Fertile ex rel., Fertile v. St. Michael's Medical Center, 169 N.J. 481, 779 A.2d 1078 (2001)).
In this case, the court has reviewed the medical report of plaintiff's doctor and its trial notes. Plaintiff in this case is a thirty-six year old vice president of J.P. Morgan Chase. He was well dressed, forthright, credible, articulate, and an impressive witness overall. He testified that his right knee had hit the dashboard during the accident, and he received conservative treatment for his lower back, neck and knee with a chiropractor for a number of weeks. Plaintiff then began treatment approximately three to four weeks later with an orthopedic surgeon for his knee. Plaintiff tried conservative physical therapy for a while and eventually, some six to seven months later, had surgery on his knee. The surgery kept him home from work for three weeks.
Since the time of the surgery, plaintiff has attempted physical activity, but his knee still bothers him. He can no longer squat or run; nor can he exercise, jog, or play basketball socially with friends. His leg hurts when exercising and doing odd jobs around the home. Plaintiff stated that his knee bothers him forty to fifty percent of the time. He also noted that there was some restriction on extension. This court found the plaintiff to be extremely credible and impressive.
A review of plaintiff's doctor's report and his testimony indicates that the doctor performed surgery on plaintiff's right knee. The doctor found a tear of the medial meniscus which was approximately sixty percent of the substance of the meniscus and this was removed. There was also a grade two articular damage to the tibial plateau and femoral condyle. Upon discharge, plaintiff could work and his range of motion was improving. On his final doctor's visit, though, it was noted that he continued to have pain in his knee related to his activity level and changes in the weather. The doctor testified that the damage to the knee was a result of the accident and that it was a permanent injury in that sixty percent of the meniscus had been removed and that there was articular damage also seen at the time of the arthroscopy. The doctor noted that plaintiff had persistent complaints of pain and that the prognosis was guarded. The doctor also testified that given plaintiff's condition, he would be more prone to arthritis as he aged.
While the verdict in the matter was significant, this court is mindful that it is *731 not to act as a thirteenth juror, and impose its judgment for that of the jury. The task of this court is to determine whether the verdict shocks its conscience and results in a manifestly unjust award. The parties stipulated during the course of the trial that plaintiff had approximately a forty year life expectancy. This court is satisfied that a jury could reasonably find that plaintiff would continue to have pain forty to fifty percent of the time over the next forty years. Plaintiff was athletic in appearance and testified he can no longer participate in jogging or playing sports that he enjoyed. He also testified that weather affects him, and on any given day, half of the day his knee bothers him. There was testimony that there is no replacement for a meniscus. There was testimony that the surgery was invasive and bore some risk. There was also testimony that the plaintiff was more prone to arthritis as he aged. The jury heard and assumedly factored all of this in coming to its conclusion as to what was a fair, just, and reasonable settlement.
While the amount of the award may be more than this court would have awarded if it were sitting without a jury, that is not the test. The test is whether the award shocks the court's conscience and results in a manifestly unjust result. This court does not find that this verdict clearly and convincingly shows a miscarriage of justice under the law. The jury found plaintiff's doctor's testimony persuasive. Plaintiff's injury is permanent and his prognosis guarded. The age and life expectancy of plaintiff did not go unnoticed. These factors, together with the testimony of the extremely credible and articulate plaintiff that he continues to have pain in his knee, that he can no longer do the physical activities he previously enjoyed, and that the problem may be further exacerbated by arthritis as he ages, obviously persuaded the jury to make the award it did.
The court, therefore, denies defendant's motion in its entirety.
NOTES
[1] At the R. 1:8-7(a) jury charge conference, defendant failed to make an objection to the court charging Model Jury Charge 5.42(a) and (b) without Oswin. Defendant also failed to make any objection on the record or otherwise following the court's charge and before jury deliberations.
[2] Our courts, however, have made it clear that the subjective test's requirement of a serious impact on the plaintiff's life is only applicable in category type six, seven and eight cases, and not in instances where there is a fracture, where only objective proof of the fracture is needed. See, Fowler v. Crystal Motors, Inc., 340 N.J.Super. 33, 773 A.2d 730 (App.Div.2001).