808 A.2d 873 (2002)
354 N.J. Super. 586
Therez JAMES, Plaintiff-Appellant,
v.
Oneida V. TORRES, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued October 2, 2002.
Decided November 6, 2002.
*874 Patrick J. Magnan argued the cause for appellant (Rabb, Hamill & Stillman, attorneys; Mr. Magnan, on the brief).
Michael K. Tuzzio argued the cause for respondent (Ronan, Tuzzio & Giannone, attorneys; Mr. Tuzzio and James M. Ronan, Jr., Tinton Falls, of counsel and on the brief; Marie A. Accardi and Edward H. Kerwin, on the brief).
Before Judges WEFING, WECKER and FUENTES.
The opinion of the court was delivered by *875 WEFING, J.A.D.
In 1998 the New Jersey Legislature passed the Automobile Insurance Cost Reduction Act ("AICRA"). As part of that legislation, it amended the verbal threshold statute. N.J.S.A. 39:6A-8. In this appeal, we are called upon to consider whether the amended statute incorporates the limitations and approach adopted by case law prior to the statute's amendment. Oswin v. Shaw, 129 N.J. 290, 295, 609 A.2d 415 (1992). We agree with the trial court that it does and thus affirm the trial court's order dismissing plaintiff's case.

I.
The question arises in the following factual context. Plaintiff was involved in an automobile accident in the late afternoon of April 12, 2000. She was twenty years old at the time. She was driving eastbound on Rahway Avenue, heading from her home in Roselle toward Elizabeth. Rahway Avenue has four lanes of traffic, two in each direction. Plaintiff was in the right eastbound lane. Defendant was also heading eastbound on Rahway Avenue, but in the left lane. Defendant attempted to make a right-hand turn from Rahway Avenue onto a cross street and collided with plaintiff's vehicle. Plaintiff testified that her body moved sideways and that she hit the back of her head on the seat when she slammed on the brakes. The police responded to the scene.
After the police concluded their investigation, plaintiff drove herself to the hospital. She was examined at the emergency room at Elizabeth General Hospital, where she complained of pain in her neck, back and legs. She was released with instructions to consult her own physician. The following day she began a course of treatment at a facility known as Doctors' Care. She received chiropractic treatment from April 13, 2000 until August 30, 2000 when she was discharged. That treatment consisted primarily of heat packs, ultrasound, and physical therapy.
During the course of her treatment, MRIs of her cervical and lumbar spine revealed bulging discs at C-4-5 and C-5-6 and L-3-4 and L-4-5. A neurologist performed an EMG and a nerve conduction study. The EMG disclosed some irritation of the nerve roots at the L-4-5 level. The nerve conduction study was normal.
At the time of the accident, plaintiff was employed as a bank teller. She missed two days of work and then returned to her job, where she remained for several months. She left that position for reasons unrelated to the accident and got a job in the delicatessen department of a local supermarket. She found that position to be too strenuous for her and quit. At the time of trial, she was working as a driver for Hospicoach Medical Transportation Company, driving a disabled child to and from school.
Plaintiff testified she still had aching pain in her neck and lower back. She said that if she had to stand for a long period of time, she would put more of her weight on her right side because her left leg would become numb. She said she could not walk up or down a lot of stairs and that she found it difficult to do her household chores or to bathe her two-year-old daughter. She testified that she took Tylenol about three times a week.
The trial was brief. There were only two other witnesses in addition to plaintiffDr. Pucciarelli, her treating chiropractor, and Dr. DeLuca, the neurologist. According to Dr. Pucciarelli, his final diagnosis was
lumbar disk bulge L3-4, L4-5; intermittent lumbar radiculopathy, which is the pain sensation that she experiences in the left leg; chronic lumbar muscle *876 spasm; chronic low back pain; cervical disk bulging C4-5, C5-6; and cervical myofascitis.
At the conclusion of the evidence, defendant moved for a directed verdict, which the trial court granted. This appeal followed.

II.
The history of New Jersey's attempts to provide both adequate compensation for tort victims and affordable automobile insurance is set forth in Thomas P. Weidner and Michael J. Canavan, The "New" Verbal Threshold: But Is It Improved?, 24 Seton Hall Legis. J. 117, 118-24 (1999) (hereinafter "Weidner and Canavan"). New Jersey first adopted a purely verbal threshold in 1988. Id. at 120. The statute created nine categories of injuries, any one of which would permit a party to present a claim for non-economic damages. The last four categories were
permanent loss of use of a body organ, member, function or system;
permanent consequential limitation of use of a body organ or member;
significant limitation of use of a body function or system; or
a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute that person's usual and customary daily activities for not less than 90 days during the 180 days immediately following the occurrence of the injury or impairment.
[N.J.S.A. 39:6A-8 (1988), amended by N.J.S.A. 39:6A-8 (1998).]
In Oswin v. Shaw, the Supreme Court ruled that questions presented under the verbal threshold statute should be analyzed in a manner similar to motions for summary judgment: "the court decides whether the injury alleged would, if proven, meet the requirements of one of the verbal threshold categories, and the jury decides factual disputes about the nature and extent of the plaintiff's injuries." Oswin, supra, 129 N.J. at 295, 609 A.2d 415. The Court explained that the role of the trial court was to determine whether a plaintiff had presented objective, credible evidence to prove that she had sustained an injury that fit within one of the nine enumerated categories and, further, whether the injury had a "serious impact" on her life. Id. at 307, 609 A.2d 415. Thus, plaintiff had to establish three elements to cross over the threshold: the injury, the serious impact and a causal nexus between the two. Id. at 318, 609 A.2d 415.
It would not be an understatement to say that it can appear difficult to find an analytical thread unifying subsequent judicial treatment of what constitutes a "serious impact" upon a plaintiff's life. Compare, e.g., Moreno v. Greenfield, 272 N.J.Super. 456, 640 A.2d 335 (App.Div. 1994) (finding serious impact when plaintiff was unable to dance or work out or care for her dogs, all of which were important pre-accident activities to her); Brown v. Puente, 257 N.J.Super. 203, 608 A.2d 377 (App.Div.1992) (finding serious impact when plaintiff had excelled at athletics for three years of high school, was unable to participate in his senior year, and his ability to study in college was compromised); and Dabal v. Sodora, 260 N.J.Super. 397, 616 A.2d 1297 (App.Div.1992) (finding serious impact when plaintiff was unable to dance, her primary social activity in which she had previously participated two to three times a week) with Sherry v. Buonansonti, 287 N.J.Super. 518, 671 A.2d 606 (App.Div.), certif. denied, 144 N.J. 588, 677 A.2d 760 (1996) (finding no serious impact when plaintiff was unable to swim or dance *877 as before); Phillips v. Phillips, 267 N.J.Super. 305, 631 A.2d 564 (App.Div. 1993) (finding no serious impact when plaintiff was unable to crochet, bake or go to flea markets as before); and Shorter v. Leach, 277 N.J.Super. 617, 650 A.2d 16 (Law Div.1994) (finding no serious impact when plaintiff was unable to continue with second job and loss of income affected her lifestyle).
The 1988 statute did not attain its objective of reducing automobile insurance premiums in New Jersey. Weidner and Canavan, supra, at 123. Recognizing that failure, in 1998, after extensive debate and consideration, the Legislature adopted AICRA. The statute has significantly revised the categories of injuries that would permit a plaintiff to assert a claim for non-economic damages. The Legislature has discarded the existing categories six, seven, eight and nine and has replaced them with the seemingly simple category of a
permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement. An injury shall be considered permanent when the body part or organ, or both, has not healed to function normally and will not heal to function normally with further medical treatment.
[N.J.S.A. 39:6A-8a.]
Plaintiff argued to the trial court, and repeats on appeal, that through the testimony of Drs. Pucciarelli and DeLuca, who explained to the jury that plaintiff's bulging discs will never retreat to their former position, she presented a prima facie case that she had suffered a permanent injury in the accident of April 12, 2000. She contends that under N.J.S.A. 39:6A-8 as amended by the Legislature in 1998, there is no requirement that a plaintiff establish that an injury has had a serious impact on her life in order to proceed with her suit. She continues that, in any event, she has established that her injury from the April 12, 2000 accident has had a serious impact on her life. The trial court disagreed with both positions, as do we.
Before proceeding to analyze the question presented, we consider it important to note an issue not before us. Defendant's motion was presented to the trial court at the close of plaintiff's case. We are thus not obliged to consider whether N.J.S.A. 39:6A-8 in its amended state immunized a plaintiff from summary judgment practice entirely by inserting a requirement that a plaintiff submit a certification executed under penalty of perjury by a physician that the party has suffered an injury within the scope of the statute.[1] Competing arguments on that question have been put forth. Weidener and Canavan, supra, at 123. We are not called upon to answer that inquiry here, for it is addressed in Rios v. Szivos, 354 N.J.Super. 578, 808 A.2d 868 (App.Div.2002).
Rather, we are confronted with two questions. Must a plaintiff demonstrate *878 that the injuries received in the subject accident resulted in a serious impact upon her life in order to have her case submitted to the jury? If we answer that question in the affirmative, we must then consider whether this plaintiff did demonstrate such a serious impact.
Two trial courts have considered the first question and have come to opposing conclusions in reported opinions. In Rogozinski v. Turs, 351 N.J.Super. 536, 799 A.2d 41 (Law Div.2002), the trial court concluded that to proceed under the amended N.J.S.A. 39:6A-8, a plaintiff had to "present evidence of ... a serious and permanent injury ... that has had and will have a serious impact upon the plaintiff and the plaintiff's life." Id. at 551, 799 A.2d 41. After reviewing the record presented, it concluded that plaintiff's injuries had not had a serious impact on her life and, thus, it granted defendant's motion for summary judgment. In Compere v. Collins, 352 N.J.Super. 200, 799 A.2d 721 (Law Div.2002), on the other hand, a different court concluded that the Legislature did not intend to incorporate the requirement of a serious impact when it adopted N.J.S.A. 39:6A-8 in its present formulation. That court, therefore, rejected defendant's post-trial motion in which defendant contended that the court had erred in its charge to the jurors when it did not incorporate the principles enumerated within Oswin in its final instructions. Id. at 212-13, 799 A.2d 721.
Plaintiff stresses that the amended verbal threshold statute itself omits any mention of serious impact. This omission, she contends, is a clear indication that the Legislature did not intend to carry forward the Oswin requirements.
We disagree for two reasons. First, the entire thrust behind the passage of AICRA was to reduce the number of litigated claims and, thus, to bring stability to automobile insurance premiums. If courts were to permit claims to go forward even in the absence of proof of a serious impact on a plaintiff's life, it would run counter to this legislative purpose.
It is self evident that with more lawsuits come higher costs. Any interpretation of AICRA that allows more lawsuits to be maintained for injuries sustained in auto accidents would undermine the Legislature's expressed purpose.
[Rogozinski, supra, 351 N.J.Super. at 550, 799 A.2d 41.]
Plaintiff relies upon the principle that it is the duty of the courts to apply the legislative intent as expressed in the language selected and not to presume that the Legislature intended something other than it expressed by its plain language. In re Jamesburg High School Closing, 83 N.J. 540, 547, 416 A.2d 896 (1980); Unkert by Unkert v. General Motors Corp., 301 N.J.Super. 583, 694 A.2d 306 (App.Div. 1997), certif. denied 152 N.J. 10, 702 A.2d 350 (1997). She contends that the Legislature's omission of the word "serious" within the definition of a permanent injury in N.J.S.A. 39:6A-8 is a clear indication that the Legislature did not intend to attach such a qualification.
We do not consider that omission determinative. The Supreme Court has recognized that when parties reach opposing plausible interpretations of the same language, the legislative intent must be deduced. Jimenez v. Baglieri, 152 N.J. 337, 346, 704 A.2d 1285 (1998).
"[i]n the absence of specific guidance, our task is to discern the intent of the Legislature not only from the terms of the Act, but also from its structure, history and purpose." Ultimately, "[i]t is not the words but the internal sense of the law that controls." *879 [Jimenez, supra, 152 N.J. at 347, 704 A.2d 1285. (Citations omitted.) ]
The intent of the Legislature can be deduced from a number of sources.
Sources of legislative intent are the language of a statute, the policy behind the statute, concepts of reasonableness and legislative history.... It is a general principle of statutory construction that "statutes are to be read sensibly rather than literally and the controlling legislative intent is to be presumed as consonant to reason and good discretion."
[Parker v. Esposito, 291 N.J.Super. 560, 566, 677 A.2d 1159 (App.Div.), certif. denied, 146 N.J. 566, 683 A.2d 1162 (1996). (Citations omitted.) ]
It is important to recognize that the amended N.J.S.A. 39:6A-8 is only one portion of the legislation enacted as AICRA. L. 1998, ch. 21. Other portions of the legislation dealt with such diverse topics as creating new dispute resolution procedures, L. 1998, c. 21, § 24 (codified at N.J.S.A. 39:6A-5.1), establishment of new territorial rating plans, L. 1998, c. 21, § 27 (codified at N.J.S.A. 17:29A-49) and creation of a statewide fraud enforcement policy. L. 1198, c. 21, § 36 (codified at N.J.S.A. 17:33A-20). Because the revision of the verbal threshold is only one component of the entire bill, it should not be read in isolation. Rather, it is appropriate to look at the legislative findings to the bill to understand the context in which the verbal threshold statute was amended.
Those findings demonstrate that the Legislature recognized the inherent inconsistency between broadening the class of permissible suits while simultaneously reducing premium costs.
Whereas, while the Legislature believes that it is good public policy to provide medical benefits on a first party basis, without regard to fault, to persons injured in automobile accidents, it recognizes that in order to keep premium costs down, the cost of the benefit must be offset by a reduction in the cost of other coverages, most notably a restriction on the right of persons who have non-permanent or non-serious injuries to sue for pain and suffering;
[N.J.S.A. 39:6A-1.1.]
Further on within the preamble, the Legislature described its efforts in AICRA as "provid[ing] for a revised lawsuit threshold for suits for pain and suffering which will eliminate suits for injuries which are not serious or permanent." Ibid.
We are satisfied from our review of the policy behind the statute and the legislative findings adopted at its enactment that the Legislature clearly intended to require that an injury be both permanent and serious to permit a plaintiff to cross the amended verbal threshold. We thus affirm that portion of the trial court's determination. To the extent Compere v. Collins, supra, holds otherwise, it is disapproved.

III.
We turn now to the question whether plaintiff presented a prima facie case that her injury has, indeed, had a serious impact upon her life. When asked how her life had been affected, plaintiff replied she had difficulty holding on to her two-year old child, going up and down a lot of stairs, sitting down and standing up quickly. She said she had difficulty with such chores as vacuuming and sweeping and bathing her daughter. She also said that driving for long periods caused her problems but that her driving job was not a problem for her because it only involved driving for an hour and a half at a time.
We noted earlier in this opinion that it can at times appear difficult to reconcile decisions whether a plaintiff's injuries have resulted in a serious impact on the person's *880 life. While we in no way denigrate the impact upon a young mother of difficulty in bathing her child, it appears clear that plaintiff is able to attend to her regular routine activities and has not been deprived of the "physical ability to continue to engage in a social or recreational activity which had been a significant and important component of ... [her] way of life." Dabal v. Sodora, supra, 260 N.J.Super. at 401, 616 A.2d 1297.
The trial court's determination that plaintiff had failed to establish her injury had a serious impact upon her life was correct.

IV.
Plaintiff raises one additional point on appealthat the trial court erred when it denied plaintiff's motion for recusal. We have carefully reviewed the record in this matter. We can find no indication that recusal was in any way warranted. There is no merit to plaintiff's contention that the trial court was in some manner biased against her in this trial; the trial court's decision to grant defendant's motion was entirely correct and not retaliatory.
Affirmed.
NOTES
[1] Defendant had, in fact, filed a motion for summary judgment. The trial court, however, refused to consider the motion for procedural reasons and the matter proceeded to trial. At the end of plaintiff's case, defendant sought to "renew" the motion for summary judgment but the trial court correctly characterized it as a motion under R. 4:37-2(b), as opposed to a motion under R. 4:46. There is no significant difference in the process of analysis under these two rules. R. 4:37-2(b) provides "such motion shall be denied if the evidence, together with the legitimate inferences therefrom, could sustain a judgment in plaintiff's favor." R. 4:46-2(c) defines a genuine issue of fact as one which "considering the burden of persuasion at trial, the evidence submitted ... together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." Brill v. Guardian Life Insurance Co. of America, 142 N.J. 520, 535-36, 666 A.2d 146 (1995).