843 A.2d 358 (2004)
367 N.J. Super. 450
Octavio SERRANO, Plaintiff-Appellant,
v.
Jacqueline SERRANO, Jessica Viruet and Alicia Rodriguez, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued February 25, 2004.
Decided March 17, 2004.
*359 Daniel E. Rosner, Vineland, argued the cause for appellant (Michael L. Saile, Jr., on the brief).
Francis X. Ryan, Cherry Hill, argued the cause for respondent Jacqueline Serrano (Green, Lundgren & Ryan, attorneys; Mr. Ryan, of counsel; Pina M. Vricella, on the brief).
Erin R. Thompson, argued the cause for respondents Jessica Viruet and Alicia Rodriguez (Powell, Birchmeier & Powell, attorneys; Ms. Thompson, on the brief).
Goldstein, Ballen, O'Rourke & Wildstein, Passiac, for amicus curiae The Association of Trial Lawyers of America-New Jersey (Richard Wildstein, on the brief).
Before Judges KING, LINTNER and LISA.
The opinion of the court was delivered by LINTNER, J.A.D.
Plaintiff, Octavio Serrano, appeals from an order for summary judgment dismissing his complaint for personal injury based on a Law Division judge's finding that his injuries did not satisfy the verbal threshold set forth in the 1998 Automobile Insurance Cost Reduction Act (AICRA), N.J.S.A. 39:6A-8a. Having carefully examined the record in the light most favorable to plaintiff, we affirm the order for summary judgment for different reasons than those expressed by the motion judge.
In opposition to the motion for summary judgment, plaintiff presented the following proofs. On October 22, 1999, plaintiff was a front-seat passenger in a vehicle driven by his wife, which was proceeding in a westerly direction on Chestnut Avenue in Vineland. As plaintiff's wife was executing a left turn onto State Street, she collided with a vehicle proceeding in the opposite direction operated by co-defendant Jessica Viruet. Plaintiff brought suit against his wife and both the owner and operator of the other vehicle.
Plaintiff was taken to the emergency room at Newcomb Medical Center. X-rays of the cervical spine revealed that the lordotic curve, the intervertebral disc spaces, and neural foramina were normal. There were no fractures or dislocations and the vertebral bodies were intact. Plaintiff was discharged from the emergency room with a cervical collar and told to use Tylenol.
On October 27, 1999, plaintiff saw Marshall Pressman, D.O., of the Delaware Valley Primary Care & Occupational Medicine Associates, who reported on November 1, 1999, that plaintiff complained of discomfort in the neck and low back. At the time of the accident, plaintiff was twenty-one years of age and an unemployed forklift operator. Dr. Pressman diagnosed plaintiff with acute post-traumatic cervical strain and sprain, acute post-traumatic dorsal strain and sprain, acute post-traumatic lumbosacral strain and sprain, closed head injury to the right side of the face and head with no loss of consciousness, bilateral trapezius myofascitis, left-sided chest wall contusion, and right temporomandibular joint dysfunction with audible click. He also sought to rule out right carpal tunnel syndrome noting a prior history of dysesthesia in the right wrist. He *360 recommended conservative treatment with outpatient therapy and the use of a TENS unit to diminish pain and increase range of motion.
In a report dated August 30, 2000, Dr. Pressman and his associate, Dr. Martin Kessler, M.D., indicated that on November 15, 1999, they re-evaluated plaintiff and found spasm and tenderness present in the cervical paraspinal muscles. They measured rotation and extension of the cervical spine and recommended moist heat, use of a TENS unit, and prescribed Naprosyn. They reported that at re-evaluations on December 1 and 27, 1999, plaintiff complained of low back, neck, and right-hand discomfort and they found spasm and tenderness in both the cervical and lumbosacral paraspinal muscles. According to Pressman and Kessler in subsequent re-evaluations performed on February 28, April 28, and May 24, 2000, plaintiff continued to complain of low back, neck, and right-hand discomfort. X-rays of the lumbar and thoracic spine taken on October 29, 1999, were negative. An MRI scan performed on January 5, 2000, revealed a scoliosis of the cervical spine but no disc herniations in either the cervical or lumbosacral areas. Pressman and Kessler reported that they referred plaintiff to Dr. Carabelli, who performed an EMG study on January 11, 2000, and diagnosed right carpal tunnel syndrome new onset. No spasm was noted in the February 28 and April 28 examinations. However, Pressman and Kessler indicated in their August 30 report that "spasm and tenderness [were] present about the cervical and thoracolumbar spines" at the May 24 re-evaluation.
The August 30 report delineated plaintiff's complaints, relating the following disability:
[H]e continued to experience interference with prolonged posture maintenance, prolonged standing, prolonged sitting, prolonged walking, and stair climbing....
Stooping, bending, lying prone or kneeling aggravated pain levels. Squatting and climbing continued to remain a problem....
Prolonged walking, running, riding a bicycle or swimming also aggravated his injuries. Child care remained problematic for the patient.
[He] complained of sleep disturbances... [and] stated that household chores such as carrying grocery bags or emptying wet laundry out of a washing machine or doing the wash aggravated pain levels. Standing on a ladder to replace a light bulb and engaging in minor household repairs were problematic. Dusting and vacuuming venetian blinds, mopping or sweeping and cleaning the tub on his hands and knees aggravated pain levels.
Except for finding "right carpal tunnel syndrome confirmed by EMG (with prior history of dysesthesia in the right wrist)," Pressman and Kessler's diagnosis in the August 30 report mirrored that set forth by Pressman in his initial report of November 1, 1999. Moreover, they concluded:
Approximately seven months have passed since the patient's initial trauma. [He] certainly appears to be suffering with significant complaints, approximately seven months following the initial trauma, and following a period of appropriate treatment stressing a rehabilitation program initially utilizing passive modalities with progression to appropriate strengthening exercises.
The patient was currently performing a home exercise program and was again urged to undergo orthopedic consultation regarding continued dysesthesia in the right wrist. It appears as of the *361 May 24, 2000 visit that the patient's complaints are stable as well as static.
[He] was again urged to obtain orthopedic consultation and return on a PRN basis as his symptoms dictate. He should continue on non-steroidal anti-inflammatory medication. Consideration will be given toward right carpal tunnel decompression (therefore should be evaluated orthopedically) as well as a course of lumbar and cervical steroid epidural injections.
Dr. Kessler issued a report on July 12, 2001, and a certification dated June 9, 2001. In his report he indicated that plaintiff's most recent evaluation occurred on June 4, 2001, at which time he complained of intermittent discomfort in the neck occurring at least once a week. He also complained of discomfort in the low back with prolonged sitting, lifting heavy objects, and reaching overhead, as well as occasional difficulties in the legs on prolonged sitting. Kessler's examination of the cervical spine showed "good range of motion, but muscular tightness and guarding were noted at full extents of mobility." Kessler indicated that thoracolumbar range of motion "revealed somewhat restricted full forward flexion and muscle spasm in the paravertebral muscles of the lower thoracic and lumbar spinal areas." He again noted that MRI studies revealed "no significant underlying disc pathologies." Kessler opined that plaintiff probably sprained his right hand during the time he grabbed the door handle, however, he stated that he "[did] not find sufficient evidence to make a post-traumatic diagnosis of carpal tunnel syndrome since the patient did have pre-existing symptoms." He concluded:
Considering the extent of time since the accident and the symptoms that [he] is still suffering from the trauma, this would certainly with a reasonable degree of medical certainty constitute a significant and permanent limitation regarding the sprain/strain injury of his cervical and thoracolumbar spine however.
In his certification, Kessler stated that in his "opinion, with a reasonable degree of medical probability [plaintiff] has suffered a permanent injury which has not healed to function normally despite treatment and which will not heal to function normally with further medical treatment." He explained "[t]he specific basis for my conclusion is ... the history of [plaintiff's] injury to his neck and back in the accident of [October 22, 1999], and persistent complaints and abnormal serial examinations since that time."
On February 6, 2002, plaintiff saw Robert J. Labaczewski, D.O., who diagnosed post traumatic cervical, thoracic and lumbosacral musculo-ligamentous strain/ sprain, temporomandibular joint dysfunction and right carpal tunnel syndrome. However, Labaczewski concluded that plaintiff "is working full duty and is not experiencing any significant limitation in his activities."
Dr. Gary Neil Goldstein, a specialist in plastic and reconstructive surgery of the hand and cosmetic surgery, was retained by defendant, but issued a report to plaintiff's counsel. Dr. Goldstein's physical examination of plaintiff revealed: (1) no signs of overt muscle fasciculation, atrophy or tremor; (2) negative finger-to-finger, finger-to-thumb, heel-to-toe, and Romberg testing; (3) low grade Tinel's over the median nerve at the right wrist; (4) 100 percent normal range of motion in both cervical and lumbar spines; (5) no evidence of spasm; (6) negative findings on compression tests and torso rotation; and (7) nontenderness to palpation of cervical, mid and low back areas. In addition to listing plaintiff's complaints, Goldstein noted *362 that plaintiff was now working as a forklift operator and as a dumpster painter. Plaintiff reported that he takes Tylenol perhaps once a week for his symptomatology.
Goldstein found that there was "some asymmetry of the jaw development" and a "reproducible snapping" on opening the jaw. He also found cervical and lumbosacral sprain and strain syndrome, right carpal tunnel syndrome, and temporomandibular joint dysfunction, all initiated by the accident of October 22, 1999. He indicated that plaintiff is "still symptomatic" and concluded that "he has ongoing musculoskeletal symptomatology" representing "permanent ongoing sequelae."
The motion judge reviewed plaintiff's deposition, which indicated that he had a couple of problems with his wrist "like opening jars and things like that," and was unable to play pick-up basketball, swim, lift weights, and do mechanic work on his car since the accident. The judge also considered the fact that plaintiff was able to return to operating a forklift, which involved jostling and up and down movement, and that he advised Dr. Goldstein that he takes Tylenol perhaps once a week. Instead of making a finding respecting either severity or permanency of plaintiff's injuries, the motion judge found that the proofs failed to establish a significant impact on plaintiff's lifestyle.
On appeal, both plaintiff and amicus, Association of Trial Lawyers of America-New Jersey (ATLA-NJ), argue that AICRA does not require proof of the second prong enunciated in Oswin v. Shaw, 129 N.J. 290, 609 A.2d 415 (1992), that plaintiff's injury has had a serious impact on his life. Both also contend that the AICRA threshold is satisfied so long as there is medical proof, based upon objective clinical evidence, that a soft tissue injury is permanent regardless of whether it is significant or serious. Stated another way, they urge that even non-serious soft tissue injuries qualify so long as there is permanency. Alternatively, plaintiff contends that he met both the objective and subjective criteria of the verbal threshold. We reject both plaintiff's and ATLA-NJ's contentions.
Under the prior verbal threshold statute the Supreme Court established a two-prong test to determine whether the verbal threshold is satisfied. Oswin, supra, 129 N.J. at 318-19, 609 A.2d at 429. The first prong requires the plaintiff to show a serious injury that fits within the statutory definition. Id. at 318, 609 A.2d at 429. The first prong had to be supported "by credible, objective medical evidence," and may not be based solely on subjective complaints. Id. at 314, 609 A.2d at 427. The second prong, which was described as both objective and subjective, evaluates the causal connection between the injury and its "serious impact" on a plaintiff's lifestyle. Id. at 318, 609 A.2d at 429.
AICRA significantly revised the prior verbal threshold limitation on lawsuit option by replacing categories six through nine[1] with a provision requiring proof of *363 a permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement. An injury shall be considered permanent when the body part or organ, or both, has not healed to function normally and will not heal to function normally with further medical treatment.

[N.J.S.A. 39:6A-8a.]
In order to satisfy the new tort threshold the statute requires plaintiff to provide a certification that is based on and refers to objective clinical evidence, which may include medical testing from a licensed treating physician or a board-certified licensed physician, stating under penalty of perjury that a person has sustained an injury of the type specified by the statute. Ibid.
Following the enactment of AICRA, two trial courts considered the question of whether the new verbal threshold statute requires plaintiffs to demonstrate that injuries received resulted in serious impact on lifestyle, and arrived at contrary conclusions. In Rogozinski v. Turs, 351 N.J.Super. 536, 799 A.2d 41 (Law Div.2002), the trial court determined that the plaintiff had not established a serious impact and entered summary judgment for defendant. In Compere v. Collins, 352 N.J.Super. 200, 799 A.2d 721 (Law Div.2002), the plaintiff sustained a tear of the medial meniscus of his right knee, requiring surgery. The Law Division judge found that the Legislature did not require proof of serious impact on lifestyle to satisfy the verbal threshold.
In James v. Torres, 354 N.J.Super. 586, 808 A.2d 873 (App.Div.2002), certif. denied, 175 N.J. 547, 816 A.2d 1049 (2003), and Rios v. Szivos, 354 N.J.Super. 578, 808 A.2d 868 (App.Div.2002), two separate appellate panels concluded that the plaintiffs were still required to establish the "serious impact" prong under AICRA. See also Ostasz v. Howard, 357 N.J.Super. 65, 67, 813 A.2d 1258, 1259-60 (App.Div.2003); Tierra v. Salazar, 356 N.J.Super. 586, 588, 813 A.2d 1208, 1209 (App.Div.2003). In the recently unpublished decision DiProspero v. Penn, No. A-3162-02T1 (App. Div. Jan.30, 2004), the majority, relying on James, affirmed the trial judge's grant of summary judgment based upon the plaintiff's failure to establish a serious impact on her lifestyle. Adopting the reasoning in Compere, the dissent in DiProspero concluded that the decision in James was "unconvincing." Interestingly, the injuries sustained by the plaintiff in DiProspero were somewhat similar to those claimed by plaintiff here, specifically, soft tissue back injury with findings of muscle spasm and TMJ with clicking of the jaw.
Faced with these opposing opinions and based upon representation that DiProspero is seeking redress to the Supreme Court, counsel at oral argument on this appeal have taken what can best be described as polar opposite approaches. Plaintiff and ATLA NJ argue that any permanent soft tissue injury, no matter how insignificant, satisfies the verbal threshold so long as there is medical proof to a reasonable medical certainty that "the body part or organ or both have not healed to function normally and will not heal to function normally with further medical treatment." Defendants, on the other hand, assert that even though a plaintiff suffers serious and permanent soft tissue injury, the AICRA threshold is not penetrated *364 unless there is proof that the injury has a serious impact on lifestyle.
Although we do not endorse either of these extreme positions, they are nevertheless indicative of the issue presently before the Supreme Court. We can clearly perceive circumstances where a person sustains a soft tissue injury, which, though permanent, is not at all serious. For example, a soft tissue injury to the neck or back can result in morning stiffness, which then dissipates upon movement. Likewise, we can envision serious soft tissue injuries such as herniated discs or a tear of a medial meniscus, which result in pain but do not seriously impact life because the affected person has a sedentary lifestyle and endures pain better than the average person.
In its preamble, the Legislature described the type of suits it intended to eliminate by revising the lawsuit threshold, specifically, "suits for injuries which are not serious or permanent, including those for soft tissue injuries." N.J.S.A. 39:6A-1.1b. Where doubt is raised as to legislative intent, it is "entirely proper ... to look to the preamble in aid of statutory construction." River Dev. Corp. v. Liberty Corp., 51 N.J.Super. 447, 468, 144 A.2d 180, 191 (App.Div.1958); accord Bass v. Allen Home Improvement Co., 8 N.J. 219, 225, 84 A.2d 720, 722 (1951); 2A Norman J. Singer, Sutherland, Statutory Construction § 47:04 at 22 (6th ed. 2000).
We agree with the observation in James that in enacting AICRA, "the Legislature clearly intended to require that an injury be both permanent and serious to permit a plaintiff to cross the amended verbal threshold." James, supra, 354 N.J.Super. at 596, 808 A.2d at 879. We, however, find it unnecessary to discuss whether AICRA requires the second prong showing of serious impact on life because the record amply supports a finding that plaintiff's injuries, if believed, were not the serious type that would vault his case over the verbal threshold simply by reliance on the medical opinions of permanency.
The June 9, 2001 certification of Dr. Kessler describes plaintiff's injuries as permanent, by using the words required by N.J.S.A. 39:6A-8a. His July 12, 2001 report concludes that the injuries "constitute a significant and permanent limitation." However, plaintiff's injuries consist primarily of soft tissue sprains and strains. Except for the positive EMG of plaintiff's right wrist, and intermittent findings of spasm, the medical records are devoid of positive objective tests establishing significant or serious injury. Dr. Kessler is unable to provide a causal relationship between the alleged carpal tunnel syndrome and plaintiff's accident. Dr. Labaczewski finds plaintiff's injuries, including carpal tunnel syndrome, causally related to the accident, however, he concludes that plaintiff's injuries do not prevent plaintiff from working full duty nor does he experience any limitation.
While Dr. Goldstein found permanent injury, his findings were based upon plaintiff's subjective symptoms for which he takes Tylenol once per week, not any objective findings. Further, Goldstein does not comment on the significance or seriousness of his finding. Finally, even if one could conclude that plaintiff's overall carpal tunnel injury was serious, there is no analysis comparing plaintiff's pre-existing wrist condition with his current carpal tunnel syndrome. See Sherry v. Buonansonti, 287 N.J.Super. 518, 522-23, 671 A.2d 606, 607-08 (App.Div.), certif. denied, 144 N.J. 588, 677 A.2d 760 (1996); Polk v. Daconceicao, 268 N.J.Super. 568, 575, 634 A.2d 135, 138 (App.Div.1993).
*365 Simply put, these are not the serious type of soft tissue injuries intended by the Legislature to qualify for tort exemption. We recognize that plaintiff suffers from discomfort at certain times and cannot participate in certain types of sporting activities. However, we are not persuaded that the type of injury suffered rises to the requisite level of seriousness necessary to pierce the AICRA threshold. Although we affirm for different reasons, a judgment will be affirmed on appeal if it is correct, even though "it was predicated upon an incorrect basis." Isko v. Planning Bd. of Livingston Township, 51 N.J. 162, 175, 238 A.2d 457, 464 (1968).
Our decision not to join the fray over the need to establish "serious impact" should not be interpreted as conveying the idea that such proof cannot be used by plaintiffs to show they have significant or serious injury. Surely, evidence of a serious impact on life resulting from a permanent soft tissue injury can be used to establish that the injury is significant or serious. We have doubts, however, with the proposition that serious and permanent soft tissue injury can only exist where there is serious impact on the injured person's lifestyle. See Villanueva v. Lesack, 366 N.J.Super. 564, 569, 841 A.2d 954, 957 (App.Div.2004) (holding that plaintiff need not show serious impact on life because a "displaced fracture" is "inherently serious").
In any event, although the soft tissue injuries here are arguably permanent, they do not meet the additional AICRA requirement of seriousness. Without proof of both, plaintiff cannot pierce the present verbal threshold.
Affirmed.
NOTES
[1] Prior to the AICRA amendments, injuries satisfying the threshold were required to fall within one of nine categories:

TYPE 1: death;
TYPE 2: dismemberment;
TYPE 3: significant disfigurement;
TYPE 4: a fracture;
TYPE 5: loss of a fetus;
TYPE 6: permanent loss of use of a body organ, member, function or system;
TYPE 7: permanent consequential limitation of use of a body organ or member;
TYPE 8: significant limitation of use of a body function or system;
TYPE 9: a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing acts which constitute that person's usual and customary daily activities for not less than 90 days during the 180 days immediately following the occurrence of the injury or impairment.
[Oswin, supra, 129 N.J. at 315, 609 A.2d at 427.]